## SHUFFLIN V. PEOPLE.

*Criminal evidence — leading question — ground of objection must be stated — conclusions. Criminal law — murder in the second degree under 'Laws 1862, chapter 197 — murder in the first degree. Criminal practice — when exception necessary.*

In a trial for murder, a witness for prisoner was asked on her cross-examination whether she had made, on the morning after the murder, certain statements to one M., to which she returned a negative answer. Afterward the people called M. to contradict said witness and show that she made said statements. M. was asked if she saw said witness on the morning in question. *Held*, that the question was proper, and an objection, on the ground that it was leading, was properly overruled.

The admissibility of testimony objected to on one ground at the trial, *held*, not reviewable on another ground on appeal.

A witness for prisoner, who had given evidence tending to show that the person killed was in the habit of becoming intoxicated, was asked what the demeanor of the deceased was when she was in that condition. *Held*, that the question was improper.

The offense was committed January 14, 1873, while Laws 1862, chapter 197, section 6, was in force. The evidence did not show that it was perpetrated in the commission of any felony. The court charged that the jury might find the prisoner guilty of murder in either of its degrees. No exception was taken to this charge. The jury convicted of murder in the second degree. *Held,* that the charge was erroneous, there being no evidence to sustain the verdict found, but no exception having been taken, the court, on appeal, could not set the verdict aside.

The court charged that the prisoner's crime was murder in the first degree if the homicide was perpetrated by him with the intent to take the life of the person killed. *Held,* correct under the provisions then contained in the statutes.

ERROR to the New York oyer and terminer to review the conviction of George Shufflin for murder in the second degree. The facts appear in the opinion.

*Charles W. Brooks,* for plaintiff in error.

*Benj. K. Phelps,* district attorney, for the people.

Present — DAVIS, P. J., and DANIELS, J.

DANIELS, J. The prisoner was convicted of the murder of his wife by means of an assault upon her person committed on the 14th of January, 1873. Their relations had previously been of a rather unfriendly nature, and both seemed to indulge in the use of intoxicating liquors. On the night when the homicide was perpetrated, he returned to his house under the influence of liquor, and beat his wife, leaving her on the floor of one of the rooms occupied by them, where she was found dead in the morning with severe wounds about her head. The evidence tended to show that those wounds had caused her death. The statements made by the prisoner after the homicide was discovered, as well as his testimony given upon the trial, tended to show that he discovered his wife, when he first saw her on the evening of the assault, under circumstances indicating that she had been guilty of adultery with a person issuing from her bedroom, and immediately assaulted her for that reason. But other evidence was given upon the trial tending to discredit his statements and evidence in this as well as other respects.

The theory of the defense was, that she cut her head in falling against a stove in the room in an effort made by her to rise

Shufflin v. People.

from the floor ; and the evidence given by the prisoner's mother asserted that to be the case, and that the assault committed by the prisoner was, by no means, serious in its nature. Upon her cross-examination she was asked whether she knew Mary McGinn, and whether she did not meet her in the yard the next morning near the hydrant, and tell her that she had great trouble,— that her son had been raising a great disturbance, in answer to an inquiry as to what was the matter. She gave a negative answer to these inquiries; and after the defense was through, Mary McGinn was put upon the stand to contradict her, by proving that she did at that time and place make those statements. The first inquiry made of her was, whether she saw Mrs. Shufflin that morning. This was objected to as incompetent and leading. The objection was overruled, and the prisoner's counsel excepted. And that exception is now urged as having been well taken.

It is quite clear that the objection was not well founded. The statement which it was proposed by the prosecution to prove was competent by way of impeaching the witness referred to. According to her evidence the prisoner had done but little if any thing more than to take his wife from the bed-room and lay her on the floor of the next room, and give her one slap on the side of the face. The statement inquired after, if it were made, was inconsistent with that evidence, because it tended to show that serious trouble and disturbance had been caused by the prisoner. That would be a material contradiction relating to the important fact involved in the case. And it was admissible for the purpose of discrediting her evidence. And for that it was received without objection on the part of the prisoner's counsel. It could not well be proved without first showing that the witness by whom it was proposed to make the proof had seen the witness, whom it was expected to contradict, on the occasion when the interview was supposed to have taken place. The answer was both necessary and proper for that purpose. And the approved mode of securing the response was by a direct question embodying what the preceding witness had denied. *Sloan* v. *N. Y. C. R. R. Co.*, 45 N. Y. 125.

It appeared by the evidence of one of the policemen that a knife was found on the premises, with blood upon it, in the morning when the prisoner's wife was found dead, and that he asked the prisoner if he knew any thing about how that knife had got such blood on it. He replied that he did not. The knife was produced and the

witness was asked if he saw that knife on the premises. This question was objected to only as leading. The objection was overruled, and the prisoner's counsel·excepted. The witness answered that he did, and that there was blood upon it. It is now urged in the prisoner's behalf that this evidence was improper because the indictment contained no averment that the homicide was in any way produced by means of a knife. But that objection was not made to the evidence offered. The objection was as specific as it could well have been made, and put upon the sole reason that the question was leading. By its form it substantially conceded that the answer would be proper if the question were differently framed, and that virtually surrendered the position now taken. The objection which was in fact taken is not insisted upon, and it could not be with any degree of propriety, because the court, in its discretion, could allow leading questions to be propounded to the witness.

A witness sworn on the prisoner's behalf gave evidence tending to show that the deceased was in the habit of becoming intoxicated. And he was then asked what her demeanor was when she was in that condition. This was objected to by the prosecution, and excluded by the court, and the counsel for the prisoner excepted. It could not have been material what her demeanor was on other occasions than that existing at the time of or immediately preceding the homicide. Besides that, if her demeanor at other times had been in any respect important, the facts themselves should have been offered, not the conclusion which the witness might have drawn from those transpiring within his knowledge. *Messner* v. *People*, 45 N. Y. 1. The prisoner can derive no benefit from this exception.

The homicide was committed while the act of 1862 was in existence. That divided the crime of murder into two degrees; the first, where the homicide was perpetrated with a premeditated design to effect the death of the person killed; the second, where it was caused without any design to effect death by a person engaged in the commission of a felony. Laws of 1862, chap. 369, § 6.

The evidence in no way tended to prove that the homicide was committed in the commission of any felony. The prisoner's crime, if murder at all, was murder in the first degree. But the court instructed the jury that they had the right, under the evidence, if they believed him guilty, to convict him of murder in either of its degrees, or of manslaughter in any degree below the first. There

was no exception taken to any part of this direction. And for that reason, even though there was nothing in the case warranting a conviction of murder in the second degree, this court cannot interfere with the determination which was made of it. The only authority which this court has over questions arising on the trial of an indictment is that given by statute. And that requires an exception in order to present the point relied upon as error. 2 R. S. 736, § 21. Without an exception this court has no power to set aside the verdict rendered because it may be unsupported by the evidence. *People* v. *Thompson*, 41 N. Y. 1; *Gaffney* v. *People*, 50 id. 417, 425; *Wilke* v. *People*, 53 id. 525.

The court charged the jury that the prisoner's crime was murder in the first degree if the homicide was caused by him with the intent to take the life of his wife. This was strictly in conformity to the construction placed upon the provision contained in the statute by which that offense was at that time defined. *People* v. *Clark*, 7 N. Y. 385; *People* v. *Austin*, 1 Park. 154; *Wilson* v. *People*, 4 id. 619.

The attention of the jury was then called to the provisions of the statute defining manslaughter in the second, third, and fourth degrees. And they were left at liberty to convict the prisoner of either, if, under the evidence given in the case, they deemed him guilty of an offense less than murder. What was said upon the subject of murder in the first degree and manslaughter was entirely free from exception, and no objection was made to it, neither was any exception taken to the statement that the jury had the right to convict of murder in the second degree.

But at the close of the case, the court was requested to charge that if the prisoner detected the deceased committing adultery, and thereupon instantly struck her, and from the effect of such blow she died, the killing could only be manslaughter. There was no evidence in the case in any manner tending to show that he detected his wife committing adultery, and thereupon instantly struck her. This proposition was properly refused for that reason.

The court was then requested to charge that the law regards adultery as so great a provocation, and makes such allowance for the passion which its discovery excites, that it absolutely reduces the grade of the offense of killing to manslaughter, and that in the lowest degree. This was also refused, and an exception taken to the refusal. Whether the provocation mentioned would reduce the

killing to the lowest degree of manslaughter, could not have been properly held as a legal proposition in the case. That depended upon the circumstances to be found from the evidence and determined by the jury.

It was not claimed that the homicide, if produced at all by the prisoner, was either justifiable or excusable. And the court had charged that if perpetrated without any design to take life, it was no more than manslaughter. More than that must therefore have been intended and understood by each of these requests. And no more could have been intended or understood by them unless they included the fact of an intent on the part of the prisoner to take the life of his wife. If they did not include that circumstance, then the jury had been fully instructed on the subject, by the direction that the offense could be no more than manslaughter without a design to take life, and that the court was not bound to repeat the instruction.

By including the intent to take life both requests were rendered improper. For the statute in that case rendered the act murder. At common law it may have been different, and undoubtedly was so. But that seems to have been changed by the statutory codification on the subject of homicide in this State. When felonious in any sense, that rendered the crime murder or manslaughter in one of its degrees. Intentional homicide, when felonious, was declared to be murder, but when unintentional, the absence of intent reduced the offense to manslaughter. Under that provision of the statute, if the prisoner caused the death of his wife, with what it has denominated a premeditated design to effect it, that was sufficient to constitute the crime of murder. And the circumstances mentioned in the requests could not then reduce it to either of the degrees of manslaughter. For the purpose of rendering it an offense of that character, the design to take life should not have been an element in the propositions presented to the court. Under the circumstances, they could not be construed as omitting that attribute. The terms in which they were expressed were inconsistent with any such understanding. And if there was no intent to take life the prisoner already had all the benefit which these propositions claimed for him by the charge the court had actually given.

Neither of the points presented in the prisoner's behalf will justify a reversal of the judgment pronounced upon him. The control of the court over the case is limited by the exceptions which were

taken upon the trial, as long as no objection has been made either to the indictment or the judgment.

And as neither of them can be sustained, the judgment should be affirmed.

*Judgment affirmed.*