CHARLES MANKE, PLAINTIFF IN ERROR v. THE PEOPLE OF THE STATE OF NEW YORK, DEFENDANT IN ERROR.

*Challenge to juror, who has formed an opinion — when properly overruled — Opinion of expert — when inadmissible.*

On the trial of the plaintiff in error for murder, one Rhodes, called as a juror, stated that he had not heard the matter talked over by anybody except his family; that he had read of it in the newspapers, and from what he had read had formed an opinion, based upon its truthfulness, which he then held and which it would require evidence to remove; that he could sit as a juror and try the case fairly and impartially, notwithstanding it, and could hear the evidence and render a verdict uninfluenced by it.

*Held,* that a challenge "for principal cause, on the ground that he had formed an opinion of the case," was properly overruled.

The prosecution sought to show, mainly by circumstantial evidence, that the plaintiff in error shot one Atloff with a gun loaded with powder and shot, and that a piece of paper, found near the body, and claimed to have been a part of the wadding, was part of a paper to which the plaintiff in error was a subscriber, and that another part of the same issue of the paper was found in his house.

Upon the trial the witness who found the piece of paper was called, and having testified that he had used firearms a good deal, and was familiar with the appearance of wadding fired from a gun, the paper was shown to him and he was asked whether, when found, it had the appearance of wadding fired from a gun, and answered, against the objection and exception of the counsel for the plaintiff in error that it had.

*Held,* that this was error, as the question was not one to be determined by the opinion of experts.

WRIT OF ERROR to the Court of Oyer and Terminer of Erie county, to review the conviction and sentence of the plaintiff in error, of murder in the first degree.

*A. G. Rice*, for the plaintiff in error.

*Robert C. Titus*, district attorney, for the people.

TALCOTT, P. J. :

This is a writ of error to the Erie Oyer and Terminer. The return of the clerk of Erie county sets forth an indictment, found in the Court of Oyer and Terminer in April, 1878, against the plaintiff in error for the murder of John Atloff, which is charged to have been committed by the plaintiff in error in the town of Elma in said county on the 2d day of April, 1878. In two of the counts of the indictment the said murder is charged to have been committed by the discharge of a shot-gun loaded with powder, shot and a leaden bullet, and in a third count the crime is charged to have been committed by beating Atloff on the head with a stone. The said county clerk returns as being indorsed on the said indictment the following memorandum, viz. :

"COURT OF OYER AND TERMINER, APRIL TERM, 1878.

"*The People* v. *Charles Manke.* Indictment for murder. Robert C. Titus, district attorney. A true bill. Horace W. White, foreman. Arraigned the 13th day of April, 1878. Plead not guilty. Tried the 2d to 11th day of May, 1878. Verdict: guilty. Filed 13th day of April, 1878.

"Lewis Counsel, trial set down for Monday, April 22, 1878. May 2d, trial begun and continued to May 11, 1878. May 11, 1878, verdict : Guilty of murder in the first degree, as charged in the indictment ; sentenced May 11, 1878, to be hung June 21, 1878, between 10 A. M. and 2 P. M."

These memoranda, by whom, and when made, does not appear, contain the only statement that the said Manke was ever arraigned or ever pleaded to the said indictment.

The said clerk's return also contains a copy of a bill of exceptions, and a statement to the effect that " at a Court of Oyer and Terminer held at the court house in the city of Buffalo, in and for the county of Erie, on the 1st Monday of April, 1878, Present — Hon. CHARLES DANIELS, justice presiding, and HENRY H. ROGERS, and BYRON A. CHURCHILL, justices of session."

"That the said Charles Manke, having been indicted for the murder of said John Atloff, was duly tried and convicted by the verdict of a jury of murder in the first degree, as alleged in the indictment, and was thereupon on the 11th day of May, 1878, sentenced to remain in the custody of the sheriff of Erie county until Friday, the 21st day of June, 1878, and that on that day, betwen the hours of 10 o'clock in the forenoon and 2 o'clock in the afternoon, to be hanged by his neck until he be dead."

To all this there is appended a further certificate of the clerk of Erie county, stating, among other things, that he has compared the annexed copy of the indictment and indorsements thereon, and the annexed copy of minute of conviction, with the sentence of the court thereon, and the writ of error, bill of exceptions and indorsements on each, and that the same are true copies, etc. "That the said conviction was had upon said original indictment, and no *record of the judgment on said conviction has been signed and filed.*"

When this writ of error and return was presented to this court, at the June Term, 1878, the counsel for the plaintiff in error, among other errors alleged in behalf of the plaintiff in error, claimed that the Court of Oyer and Terminer had erred in passing sentence upon the plaintiff in error, without having first asked him what he had to say why sentence should not be passed upon him according to the said conviction, and this court seeing that, if this claim of the counsel for the plaintiff in error was well founded in fact, that the plaintiff in error would be entitled to his discharge, unless a new trial should be awarded to him for some error committed on the trial (*Messner* v. *The People*, 45 N. Y., 1), and seeing that the clerk of the court below had certified to us that "no record of the judgment on such conviction had been signed and filed," we dismissed the writ of error in order that a full record of the judgment should be made up by the district attorney, or in case of his neglect to make up and file such record the defendant might cause one to be made up under 2 Revised Statutes, 738, section 4. The Court of Appeals, however, thought it was the duty of this court to proceed upon such of the elements of a judgment-roll as were presented by the clerk's return, and to render judgment upon such allegations of error as appeared from

such return, holding, "It is for the plaintiff in error to show affirmatively that error has been committed. If the record which he brings up by his writ does not contain the proceedings in the court below wherein the error, if done, would appear, he fails to show that it was done, and the appellate court cannot and need not pass upon that allegation of error." As neither the plaintiff, nor the defendant in error have applied for a writ of *certiorari* to the Oyer and Terminer to bring up any other matters which appear in this case by the records of that court, we proceed to consider only the errors alleged to have occurred on the trial as presented by the bill of exceptions.

The first error alleged by the plaintiff in error is in regard to the disposition of a challenge to one Riley Rhodes, one of the jurors summoned to try said indictment, who, being examined under oath, stated in substance that he had not heard the affair talked over by anybody except his own family, but that he had read of it in the newspapers, and from what he had heard and read he had formed an opinion in the case; that he held that opinion now, and that it would require evidence to remove that opinion; that he based his opinion on the truthfulness of that report; that he could sit as a juror and try the case fairly and impartially notwithstanding the opinion he had formed from what he had read; that he could hear the evidence and render a verdict in the case without being influenced by any opinion he might have formed, etc. Thereupon the court held that the said Riley Rhodes was competent as a juror in the case. The act of 1872 (Laws of 1872, ch. 475, 1133) provides that the previous formation or expression of an opinion in reference to the circumstances upon which any criminal action is based, or in reference to the guilt or innocence of the prisoner or a present opinion in reference thereto, "shall not be a sufficient ground of challenge for principal cause to any person who is otherwise legally qualified to serve," etc. * * * "Provided the person * * * shall declare on oath that he verily believes that he can render an impartial verdict according to the evidence, * * * and that such previously formed opinion or impression will not bias or influence his verdict, and provided the court shall be satisfied that the person so proposed as a juror does not entertain such a present opinion

as would influence his verdict as a juror." The only challenge to the juror in this case is stated to be a challenge "for principal cause on the ground that he has formed an opinion of the case." The points made in relation to the overruling of the challenge to the juror in this case are: First. That the juror did not bring himself within the proviso of the act referred to. Second. That the judge did not find, as a fact, that the juror did not entertain such present opinion as would influence his verdict, but decided as matter of law that the juror was competent. It does not appear that the juror was challenged to the favor, which would bring up the question of his indifferency to be decided upon by the court as a question of fact (*Thomas* v. *The People*, 67 N. Y., 218), but the juror having on oath declared substantially as required by the statute, it remained only for the trial court to be satisfied that he did not entertain such a present opinion as would influence his verdict as a juror. That the court was so satisfied is sufficiently manifested by its ruling, holding that the juror was competent. The decision in the case of *Greenfield* v. *The People* (13 Hun, 242), cited by the counsel for the defendant in error, has recently been reversed by the Court of Appeals on the question of fact arising upon a challenge to a juror, but we understand that reversal to have been placed entirely upon the ground that the juror thus challenged had formed his opinion upon having read what purported to be a statement of the sworn evidence given by the witnesses on the first trial of the case, and upon the ground that an opinion having been derived from such a source was likely to be more firm and less liable to be changed on another trial, than in a case where the opinion of a juror has no other foundation than appears in this case.

The bill of exceptions does not set out the substance or purport of all the evidence which was relied on by the prosecution, as tending to establish that the prisoner was the person who committed the homicide. We infer, however, from so much as is stated in the bill of exceptions that the principal reliance of the prosecution to connect the prisoner with the act of killing was upon circumstantial evidence. Amongst other evidence it appeared that Atloff was shot while riding along a road called the Bullis road, with a gun loaded with powder and shot, and that a piece of

paper partially folded up, and which was claimed to have been a part of the wadding with which the gun was loaded, was found in the Bullis road, and very near where Atloff's body lay after he was killed. That the piece so found was part of a newspaper published at Buffalo, in the German language, called the " Democrat and Weltburger," and that it was a part of that paper which was issued on the twenty-first of March ; and evidence was given tending to show that a portion of the " Democrat and Weltburger" was found in the prisoner's house the day after the homicide, the prisoner being a regular subscriber to that paper. On the examination, in behalf of the prosecution, of the witness who found the paper, claimed to have been a part of the wadding with which the gun was loaded, the district attorney asked the witness the following questions in relation to the piece of paper so found : " Q. You spoke about some paper wadding — look at that ? A. Yes, sir ; I should think that was it ; it is what I call wadding. Q. Have you seen wadding that has been shot from a gun ? A. Yes, sir. Q. And noted its appearance ? A. Yes, sir ; I have used fire-arms a great deal myself." The court then asked the witness as follows : " Then you mean to say you are familiar with the appearance of wadding shot from a gun ? Yes, sir ; I think I am. You may answer whether that (the piece of paper found, and claimed to have been a part of the wadding with which the gun was loaded) had that appearance or not ? " The question and the answers to it were objected to by the counsel for the prisoner, on the ground that the subject was not one of science or skill ; that the opinion of the witness was incompetent and improper ; that the paper and its appearance should be described, and the jury should draw the inference. The court overruled the objection, and allowed the witness, so far as he could, to state the facts as he observed them, and the prisoner then and there excepted to the decision, and the witness answered, " Yes, sir ; it had the appearance of being wadding shot from a gun."

This question, as to whether the piece of paper produced had, when found, the appearance of having been used as wadding for a gun, and the appearance of having been shot from a gun, was, so far as we can judge from such portions of the evidence as are recited in the bill of exceptions, an important, and to a certain extent, a

vital question in the case. The question propounded to the witness was put to him for the purpose of getting his opinion as an expert accustomed to the use of fire-arms, whether the piece of paper in question had been used as wadding shot from a loaded gun. He had claimed some experience in such matters, and without doubt his opinion on the subject was sought for the purpose of influencing the jury in their conclusion, as to whether the prisoner was the party who committed the homicide, as he was a subscriber to the paper, from one number of which it had apparently been taken, a portion of which paper was found in the prisoner's home the day after the homicide. We do not think the question was one which it was competent, as a matter of legal evidence, to determine by the opinion of experts. It is well-settled that " the testimony of experts, as experts, cannot be received on subjects of general knowledge, familiar to men in general, and with which jurors are presumed to be acquainted." (*Concord R. R.* v. *Greeley*, 3 Fost. [23 N. H.], 237.) The opinions of experts are not competent, unless questions of science are involved. (*People* v. *Bodine*, 1 Denio, 281; *Lyman* v. *State Ins. Co.*, 14 Allen, 329.) Witnesses must testify to facts, not to their inferences or conclusions. It is only where the matter inquired of lies within the range of the peculiar skill and experience of the witness, *and* is one of which the ordinary knowledge and experience of mankind does not enable them to see what inferences should be drawn from the facts, that the witness may supply opinions as their guide. (*Kennedy* v. *The People*, 39 N. Y., 245.) See, also, for various cases where opinions have been held inadmissible. (*Messner* v. *The People*, 45 N. Y., 1; *People* v. *Rector*, 19 Wend., 569; *Wilson* v. *The People*, 4 Parker, 619; *Merritt* v. *Seaman*, 2 Seld., 168; *Keller* v. *N. Y. C. R. R. Co.*, 2 Abb. Ct. App. Dec., 480.)

In the celebrated case of *The Commonwealth* v. *Webster* (5 Cush., 295), a question arising, whether a writing was produced with a peculiar instrument found in the defendant's possession, on an offer to ask a witness his opinion, Chief Justice SHAW said : " We think the witness opinion quite inadmissible."

So we think, in this case, the inference to be drawn from the piece of paper was not a question of science or peculiar skill, but was a question open to common observation ; and whether that

appearance indicated that it had been shot from a gun, could have been determined by the jury, who are to be presumed to have been men of ordinary intelligence, from a description of the *facts* touching the appearance of the paper when found, such as the manner in which it was folded ; whether it appeared to have been partially burned ; whether it bore upon its creases powder stains, etc.; and that the opinion of the witness, formed by a process of reasoning from the facts known to him, was incompetent, and was in effect substituting him in place of the jury, who were as competent to draw correct inferences as the witness could be. It is claimed that the latter portion of the ruling of the court on this subject in some measure qualified the overruling of the objection taken by the prisoner's counsel. We do not so understand it. The ruling apparently not only permitted the witness to state his opinion as to what the appearance of the piece of paper indicated, but moreover permitted him to state the facts as far as he could.

The objection to the question whether the piece of paper found had the appearance of being wadding shot from a gun was expressly and distinctly overruled, so that the ruling in effect was that the question was competent, and it was evidently so understood, as the witness immediately proceeded to answer it. " Yes, sir ; it had the appearance of being wadding shot from a gun." This answer was specifically objected to in the objection stated in the bill of exception.

We concede that the question just discussed lies very near the line which divides cases in which opinions are competent to be given in evidence from those which are clearly inadmissible. But if it were a matter of doubt whether the evidence was proper or otherwise, we should feel bound, in *favorem vitæ*, to hold that in this case it was inadmissible, as it was apparently of vital consequence in making out the chain of circumstances whereby the conviction of the prisoner was secured.

After the defence had concluded, and the prisoner Manke had been sworn in his own behalf, and had among other things given evidence tending to show that he was not at or near the Bullis road on the day of the homicide, the People called a young woman named *Eberhardt* (who had been sworn in behalf of the People on the third day of the trial, and had then given testimony, tending only

to fix the time of day when the killing took place by stating the time when and the place where she had seen another person, who had first discovered that Atloff had been killed), and offered to show by her that she was on the Bullis road shortly before the time when the body was found, and saw the prisoner partially concealed by the side of the Bullis road, near the place where Atloff was killed.

The counsel for the prisoner objected to this evidence, on the ground that such proof was part of the People's case in chief, and after having rested, and after the prisoner had concluded his defence, such evidence was improper and incompetent. The court, however, overruled the objection, and allowed the evidence to be given on the ground that it contradicted the statement of the prisoner made in his testimony in his own behalf, to the effect that he was not at or near the place where the homicide was committed on the day when it took place. The defendant excepted to the admission of the evidence, and the girl *Eberhardt* then testified that on the day of the homicide she was on the Bullis road and saw the prisoner partially concealed near the road and near the place where Atloff was killed. Although it would seem that this evidence of the girl *Eberhardt*, if brought to the knowledge of the district attorney before she left the stand, on the third day of the trial, would have formed an important link in the chain of circumstances relied upon for conviction, and ought then to have been produced, still for whatever reason it may have been omitted at that time, it was made admissible in rebuttal of the statement of the prisoner referred to by the court, and its admission for that purpose was wholly within the discretion of the court duly weighing the circumstances which had a tendency to throw suspicion upon the testimony then for the first time offered. Strictly speaking this testimony could only be availed of as impeaching the statement of the prisoner, to rebut which it was admitted, but from the nature of the testimony thus admitted, it was almost impossible that it should not, if believed, have the effect to influence the jury upon the principal charge, and it is to be presumed that the court took all proper care to restrain its effect to the purpose for which it was admitted.

The offer on the part of the prisoner, after the case had been

closed, with the exception of certain named witnesses, proposed to be called by the prisoner to contradict the testimony of the witness *Eberhardt* as to particular statements, to call other witnesses to impeach her *general character*, rested also in the sound discretion of the court in view of all the facts which had transpired on the trial, and we cannot see from the bill of exceptions that there was any abuse of that discretion in refusing to permit the trial to be reopened for such purpose.

As the counsel for neither party moved for a *certiorari* to bring up any additional portions of the record of the Oyer and Terminer to prove or disprove whether the point made by the counsel for the prisoner that he was not asked, previous to sentence, if he had anything to say why judgment should not be given, and as we have arrived at the conclusion that the admission of the opinions of the witness as to the appearance of the gun-wad was error, for which the conviction must be reversed, we deem it unnecessary to send such a *certiorari* or to examine on such portions of the record as are returned in this writ of error, whether any, and if any, what presumption as to whether such question was duly asked of the prisoner is to be made.

Conviction and judgment reversed, and the proceedings remitted to the Oyer and Terminer of Erie county, with directions for a new trial in that court.

SMITH and HARDIN, JJ., concurred.

Ordered accordingly.