# Court of Appeals.

October 8, 1895.

## PEOPLE v. THOMAS KERRIGAN.

(69 St. Rep. 508.)

1. APPEALS— COURT OF APPEALS.
     The court of appeals has power, in a capital case, to review the facts and to grant a new trial when satisfied that the accused has not had a fair trial, or when injustice has been done, but it must observe the rules and principles which apply to all tribunals exercising appellate jurisdiction.

2. SAME.
     When the jury has once determined, upon evidence which is sufficient, even though capable of diverse or opposing inferences, the questions of fact, the court of appeals has no more right than the trial court to substitute its own judgment in the place of that of the jury or to usurp its legitimate functions.

3. MURDER—PRECEDENT QUARREL——QUESTION FOR JURY.
     Though the language and conduct of the deceased provoke the original quarrel, yet, if after the difficulty has terminated, the defendant returns to renew it and, instead of avoiding further trouble, deliberately seeks out the deceased and shoots him, the law holds the defendant responsible for his act, so long as there were time and opportunity for reason to assume its sway and the passions to cool; and it is a question for the determination of the jury whether sufficient time had elapsed for the excited passions of the defendant to cool.

Appeal from judgment of the court of oyer and terminer of the county of New York, entered upon a verdict, convicting defendant of the crime of murder in the first degree.

Andrew D. Parker, for appellant.

John D. Lindsay, for respondent.

O'BRIEN, J.—The defendant was convicted of the murder of one Aaron Alexander in a saloon in Rivington street in the city of New York on the night of April 3, 1894. That the deceased died from the effects of a pistol shot, fired by the defendant at the time and place above mentioned, is not disputed, the only

question being whether the other elements of intent, delibera-
tion and premeditation necessary to constitute the crime were
sufficiently established.    It appears from the testimony that the
defendant was a strong, powerful man, who was disposed to be
quarrelsome, and who actually had some quarrel or dispute with
the defendant about a week before the homicide.  The particu-
lars of this difficulty do not distinctly appear, and they are
material only so far as they tend to show that on the night of
the homicide the deceased and the defendant met in the saloon
under the influence of those feelings and passions which had
been incited by a previous quarrel or serious disagreement.    It
appears that the deceased, the defendant and several other
persons, who associated more or less with them, were in the
habit of meeting at this saloon in the evening for the purpose of
drinking and card playing, and, on the evening of the homicide,
were all together at an early hour.   The immediate cause of
the difficulty which preceded the shooting was what the de-
ceased evidently took to be a slight offered him by the defendant.
It appears that the deceased, the defendant and five other per-
sons were in the bar room of the saloon on the night in ques-
tion, and the defendant asked the five other persons to drink
beer with him, ignoring the deceased, who immediately took
offense and called the defendant offensive and vulgar names,.
and finally struck him in the face and upon the nose, causing the
blood to flow.   There is some conflict in the testimony of the
witnesses as to what actually took place and was said by both
parties at this stage of the quarrel.   They all agree, however,
substantially, that the defendant received from the deceased
one or more severe blows in the face with the fist or, as some
of them say, with a beer glass which was held in the hand,
and that after this occurred the defendant went into a closet
adjourning the bar room washed the blood from his face, and
then passed through the bar room out into the street, through
the door.   After the lapse of a period of time which is variously
described by the witnesses as from five to fifteen minutes, he re-
turned, found the deceased still in the bar room, and pointing a
pistol at him fired while the deceased was attempting to escape
from him behind the bar. The bullet entered the body of the de-
ceased near the right hip, passed through the pelvis and came

out in front, inflicting a wound from which he died soon after.

One of the police officers, who had the defendant in charge after the shooting, testified in substance that the defendant confessed to him that after the quarrel in the saloon and after the defendant had washed the blood from his face, he went directly to his house, which was about two blocks distant, and there procured the revolver and then returned to the saloon and fired the fatal shot at the deceased.

The defendant was the principal witness in his own behalf. He denied that he made any such admission to the police, swore that he found the pistol in the street in the month of October previous, and that he carried it constantly from that time, and had it in his pocket when the alteration took place in the saloon, resulting in the blow from the deceased. That upon entering the saloon the second time he took it from his pocket intending only to frighten the deceased. That one of the bystanders, having seized him by the wrist, the pistol was accidentally discharged and in that way the wound was inflicted which produced the death of the deceased, without any intent to kill on the part of the defendant.

The case was submitted to the jury upon the evidence under a careful charge, and the verdict of conviction must be taken as conclusively establishing the facts against the defendant's contention. The defendant's version of the transaction, which, upon its face, was extremely improbable, was discredited and wholly rejected by the jury, and that given by the witnesses for the People has been adopted.

While this court has the power in a capital case to review the facts and to grant a new trial when satisfied that the accused has not had a fair trail, or when injustice has been done, it must observe the rules and principles which apply to all tribunals exercising appellate jurisdiction. It is the province of the jury to determine questions of fact, depending upon evidence in any degree conflicting, and to declare by their verdict what the truth is, and when once determined, upon evidence which is sufficient, even though capable of diverse or opposing inferences, this court has no more right than the trial court to substitute its own judgment in the place of that of the jury, or to usurp its legitimate functions.

The jury must be satisfied of the guilt of the accused beyond a reasonable doubt, and where a conviction has been had in a capital case upon conflicting evidence, this court may undoubtedly grant a new trial when convinced, upon a review of the whole evidence, that the conclusion of the jury was not reasonably possible, or that the proof does not come up to the required standard, or for any other reason injustice has been done. People v. Cignarale, 110 N. Y. 23; 16 St. Rep. 155.

According to the settled rules adopted and followed by this court for the review of case of this character, nothing appears on the record that would justify us in interfering with the finding of the jury.

The learned counsel for the defendant does not rest the appeal upon the ground that the shooting was the result of accident. That was the theory of the defendant himself when on the witness stand. It would be manifestly impossible for any appellate court to give any weight to a theory so improbable after it had been discredited by the verdict of the jury.

The argument now submitted for the defendant suggests that the homicide was not committed with the deliberation and premeditation which is an essential element of the crime of murder in the first degree. It is quite possible that if the defendant had fired the fatal shot while resisting the assault upon him by the deceased, or at the moment that he had received the blow in the face, that the degree of criminal responsibility would be changed. But the jury have found that, whoever was the aggressor originally, the quarrel had ended, the parties had separated, that the defendant had no cause to apprehend further danger, and that when he returned, after the lapse of sufficient time for the passions to cool, and without any new provocation, fired at the deceased, there existed in his mind a deliberate and premediated design to effect his death. If it be conceded that the original quarrel was provoked by the deceased, and that the defendant was abused and assaulted as claimed, still the shooting was wholly unjustifiable. There being no longer any reason for the defendant to apprehend any bodily injury, his act in killing the deceased in the manner described by the witnesses for the People was murder within all the cases, and it was clearly a question of fact for the determination of the

jury whether sufficient time had elapsed for the exicted passions of the defendant to cool. Shorter v. People, 2 N .Y. 193; People v. Sullivan, 7 id. 396; People v. Kelly, 113 id. 647; 22 St. Rep. 969; People v. Carlton, 115 N. Y. 618; 26 St. Rep. 434.

It may be true that the defendant left the saloon, procured the pistol, returned and fired the fatal shot while smarting and angered by reason of the insults and blows of the deceased, but these facts constitute in law no excuse or justification for the killing. So long as there was time and opportunity for reason to assume its sway and the passions to cool the law holds the defendant responsible for his acts. It may be that the language and conduct of the deceased provoked the original quarrel in the saloon, but after that difficulty had terminated the defendant returned to renew it, and, instead of avoiding further trouble, as was his duty, deliberately sought out the deceased and shot him, as the jury found from motives of revenge. It is not now within the province of the court to disturb the verdict of the jury on the ground that the deceased was the aggressor in the beginning. The courts, in the administration of criminal justice, are bound by settled legal rules. If the effort and operation should be mitigated in a particular case by reason of special facts or circumstances, that power rests with the executive department of the government and not with the judicial tribunals. There are some features of this case that deserve, and doubtless will receive, careful consideration in that department. People v. Fish, 125 N. Y. 136; 34 St. Rep. 840.

There are no other questions disclosed by the record that call for further discussion, or that would justify a new trial, and the judgment of conviction must, therefore, be affirmed.

All concur.

Judgment affirmed.