# Court of Appeals.

December 15, 1896.

## PEOPLE v. WILLIAM YOUNGS.

**1. Court of appeals — Power under section 528 of the Criminal Code.**

The court of appeals, while it has the power in a capital case to review the facts and grant a new trial when satisfied that the accused has not had a fair trial, or when it appears that injustice has been done, must, however, observe the rules and principles which apply to all tribunals exercising appellate jurisdiction.

**2. Same.**

When the issue of fact is once determined by the jury upon evidence which is sufficient, even though it may be capable of diverse and opposing inferences, the court of appeals has no more right than the trial court to substitute its own judgment in the place of that of the jury or to usurp its legitimate functions.

**3. Supreme court—Designation.**

The requirement of section 232 of the Code of Civil Procedure, requiring justices of the appellant division to make the appointments before the 1st day of December, 1895, is directory, and the fact that they did not make the designations until three days afterwards, does not affect the validity of the act.

**4. Same.**

The fact that the appellate division had no legal existence under the Constitution until January 1, 1896, does not exclude the power of the justices, after their appointment and before that day, to assemble and designate the terms of the court and assign the justices who were to preside therein.

**5. Same.**

But if any irregularity in the designation arose from this fact, it was cured by the redesignation on that day, when the jurisdiction of the court became complete.

**6. Grand jury—De facto.**

A grand jury regularly drawn from the body of the county, summoned and sworn as provided by law, is at least a de facto jury, and sufficient for the protection of all the defendant's constitutional rights, though the designation of the term of the court was not in strict compliance with the Constitution or the statute.

**7. Evidence—Insanity—Expert.**

It is not legal error to permit a medical expert who has made a personal examination of the patient for the purpose of determining his mental condition, to give his opinion as to that condition at the time of the examination, without in the first instance disclosing the particular facts upon which the opinion is based.

**8. Same.**

When it is shown that a medical expert has made the proper professional examination of the patient in order to ascertain the existence of some physical or mental disease, he is then qualified to express an opinion on the subject, though he may not yet have stated the scientific or external symptoms on which it is based.

**9. Same—Nonexperts.**

Nonexperts are not allowed to express an opinion on the subject of sanity or insanity, or as to whether the party was in fact rational or ir_rational, but only to state the impression that the acts and declarations of the party concerning whom the inquiry is made produced upon their minds at the time.

**10. Same.**

Where the testimony, though the questions were improper in form, amounts to nothing more than the impressions which the witnesses derived from the acts and conversations related, and there is no reason to believe that it was understood by the jury in any other sense, error in admitting it is not ground for reversal.

**11. Same—Objection.**

Objection, so made as not fairly to indicate the ground, raises no question on appeal.

**12. Witness—Impeachment.**

A question, or an offer of proof intended to be the foundation of the impeachment of a witness, should be clear and specific. If it does not embrace all the elements of a contradictory or inconsistent act or statement made out of court, it may properly be excluded.

**13. Court of appeals—New trial.**

The power of the court of appeals to grant a new trial upon erroneous rulings at the trial is ample, even though no exception has been taken; but, in such a case, it should appear that some principle or rule of law has been violated to the prejudice of the accused.

**14. Same.**

The power to grant a new trial for legal error must be exercised in conformity with another provision of the statute, which requires that judgment upon an appeal must be rendered without regard to technical errors or defects, or exceptions which do not affect the substantial rights of the parties.

Appeal from a judgment of conviction of murder in the first degree, rendered at a term of the supreme court held in and for the county of Montgomery.

Louis H. Reynolds, for appellant.

Z. S. Westbrook and L. F. Fish, for the People.

O'BRIEN, J.—The defendant was convicted of murder in the first degree, and appeals to this court for a new trial. There is

no dispute whatever with respect to the fact that on the 14th day of December, 1895, at the place charged in the indictment, the defendant shot and killed his wife with a revolver, having deliberately fired two shots at her, both of which took effect, and one of them inflicting a mortal wound producing death. The facts and circumstances attending the commission of the act are fully disclosed by the record, but it is not necessary to repeat them here at much length. The defense was insanity, or at least the existence, at the time of the commission of the act by the defendant, of such mental disturbance or defect of reason as to render him irresponsible for his act. Some proof was given by the defendant tending to support this defense, which was answered by the people by proof of his acts and declarations before and after the shooting, and by the testimony of medical experts to the effect that the defendant was sane at the time he committed the act charged. It cannot be and is not seriously claimed by the learned counsel for the defendant, that the verdict of the jury in finding that the defendant was responsible is against the weight of evidence, or that there is any just ground for complaint in that respect. It is proper to say that, after a careful examination of all the testimony in regard to the mental condition of the defendant at the time of the homicide, it does not fairly permit any other conclusion than that the shooting was the willful, deliberate, and premeditated act of a person who understood perfectly well the nature, quality, and consequences of his act. Indeed but for the atrocious circumstances attending and preceding the act, and the absence of all cause, provocation, or apparent motive for the commission of the crime, the defendant's responsibility, in the legal sense, could scarcely be doubted. It appears that the defendant and the deceased had been married something over six years, and had two children. They lived together until the month of October, 1895, when the deceased left the defendant, and entered the hospital for treatment of a private disease which she claimed had been communicated to her by the defendant. This disease seriously affected her health, and destroyed the sight of one of her eyes. Whatever may be the truth as to the responsibility of the defendant for his wife's condition, it is quite clear that she believed that he was the author of the wrong, and re-

fused· to live with him any longer, and finally threatened to apply
for a divorce.   The proof would seem to indicate that the wife
looked upon the defendant with feelings of hatred and disgust,
but that he was anxious to have her return, and resume .her
marital relations with him.   He attempted to bring this result
about through the intervention .of friends and neighbors and
otherwise, but failed.   When he became convinced that his wife
intended to separate from him, he sold his household effects, with
the intention, apparently, of leaving the place.   The deceased re-
turned from the hospital about a week before the homicide, and
with her children went to,the house of a neighbor, where she had
been invited by his wife and grown-up daughter, who evidently
sympathized with her misfortunes.   The defendant was, or pre-
tended to be, jealous of the relations that existed between his
wife and this neighbor, in whose house she had, for the time at
least, taken up her abode ; and this is the only motive suggested
for the commission of the crime.   Whatever may have been the
real state of the defendant's feelings on this· subject, there is no
proof in the record to indicate that he had the slightest cause to
suspect that anything improper had taken place between them, or
was likely to.   The deceased wife seems to have sought the shel-
ter of this neighbor's house, for the time at least, for herself and
children, and he and his wife and daughter extended it to her as
an act of kindness.   On the 14th day of December, 1895, the de·
fendant went to this house, armed with a revolver, entered
through the kitchen door without any warning or invitation, then
passed into another room, where his wife was, and there fired the
shot which caused her death.   It appears that for some days prior
to the homicide the defendant had the revolver in his possession,
and practiced with it, and that he made various statements to dif-
ferent persons in the neighborhood with respect to his wife, and
his intentions towards her, which the jury was warranted in in-
terpreting as threats on his part to take her life.

Looking at the case upon the merits, it is impossible to find
any ground for the interference of this court.   The questions in
the case were for the jury, and the verdict is well supported by
the evidence.   While this court has the power, in a capital case,
to review the facts, and to grant a new trial when satisfied that

the accused has not had a fair trial, or when it appears that injustice has been done, yet it must observe the rules and principles which apply to all tribunals exercising appellate jurisdiction. It is the province of the jury to determine questions of fact depending upon conflicting evidence, and to declare by their verdict what the truth is; and when the issue of fact is once determined upon evidence which is sufficient, even though it may be capable of diverse and opposing inferences, this court has no more right than the trial court to substitute its own judgment in the place of that of the jury, or to usurp its legitimate functions. People v. Kerrigan, 147 N. Y. 210; 41 N. E. 494. There cannot be any serious ground for the claim, and, indeed, it is not claimed that this is a case which would justify this court in interfering with the facts as determined by the jury.

We can only consider, upon this appeal, certain exceptions taken at the trial, and which have been urged upon the argument as grounds for the reversal of the judgment. The defendant was indicted at a term of the court held on January 20, 1896, which was appointed by the justices of the appellate division in the third department on December 3, 1895. On January 1, 1896, the same justices reconvened and made the appointments for terms of courts as before, thus ratifying what had been done at their first meeting. The justices were required to make these appointments by article 6, section 2, of the new constitution, and also by section 232 of the Code of Civil Procedure. It is true that by the provisions of the Code they were required to make the appointments before the 1st day of December, 1895; but this, we think, was directory, and the fact that they did not make the designations until three days afterwards does not, we think, affect the validity of the act. The constitution conferred upon them this power in explicit language, and their jurisdiction was not affected by the circumstance that the act was not performed on the precise day that the legislature had designated for that purpose. It is further said that, as the appellate division had no legal existence under the constitution until January 1, 1896, the designation of the terms of the court on December 3, 1895, was premature. It is true that the jurisdiction of the appellate division as a court was not complete until January 1, 1896, and exists from

that day only. But we think that this fact would not exclude the power of the justices after their appointment, and before that day, to assemble and designate the terms of the court, and assign the justices who were to preside therein. The constitution required them to perform this duty without designating any time, and the legislature, under the constitution, had directed the performance of the act prior to the 1st of December. The designation of the particular day was, as we have already remarked, directory, and the observance of the date was not essential to the jurisdiction to perform the act.

But if it could be shown that there was any irregularity in the designation made by the appellate division justices arising from the fact that they did not constitute a court until the 1st day of January, 1896, still we think that the irregularity, if any, was cured by the redesignation on that day, when the jurisdiction of the court became complete. We think, therefore, that there is no substantial ground upon which the legality or regularity of the court where the indictment was found can be questioned. People v. Herrmann, 149 N. Y. 190; 43 N. E. 546. But, even if this were otherwise, and it could be said that the designation of the terms of the court was not in strict compliance with the constitution or the statute, the objection would not, we think avail the defendant. The court in which the indictment was found was appointed to be held by the body which the constitution and the statute had designated for that purpose. The grand jury was regularly drawn from the body of the county, summoned and sworn, as provided by law. It was at least a de facto jury, selected and organized under the forms of law, and that was sufficient for the protection of all the defendant's constitutional rights. People v. Petrea, 92 N. Y. 128.

It appears by the record that certain medical experts were called as witnesses by the prosecution, who testified that they had made a personal examination of the defendant with reference to his sanity, and were then asked whether, in their opinion, he was sane at the time of such examination. These questions were objected to by the defense as incompetent, but the objection was overruled, and there was an exception. It is now urged that these experts should not have been permitted to express an opin-

ion without first stating the facts upon which such opinion was based. The testimony of experts is an exception to the general rule which requires that the witness must state facts and not express opinions. In such cases the opinion of the witness may be based upon facts so exclusively within the domain of scientific or professional knowledge that their significance or force cannot be perceived by the jury, and it is because the facts are of such a character that they cannot be weighed or understood by the jury that the witness is permitted to give an opinion as to what they do or do not indicate. In such cases it is the opinion of the witness that is supposed to possess peculiar value for the information of the jury. Of course, all the facts or symptoms upon which the opinion is based may be drawn out also either upon the direct or cross-examinations. It is undoubtedly the better practice to require the witness to state the circumstances of his examination, and the facts, symptoms, or indications upon which his conclusion is based, before giving the opinion to the jury. But we think that it is not legal error to permit a medical expert, who has made a personal examination of a patient for the purpose of determining his mental condition, to give his opinion as to that condition at the time of the examination, without, in the first instance, disclosing the particular facts upon which the opinion is based. The party calling the witness may undoubtedly prove the facts upon which the opinion is based, and, as we have already observed, that is doubtless the safer practice. It may also be true that the court, in the exercise of a sound discretion, may require the witness to state the facts before expressing the opinion, and in all cases the opposing party has the right to elicit the facts upon cross-examination. But the precise question here is whether the court committed an error in permitting the witness to give the opinion before the facts upon which it was founded were all disclosed, and we think that, when it is shown that a medical expert has made the proper professional examination of the patient in order to ascertain the existence of some physical or mental disease, he is then qualified to express an opinion on the subject, though he may not yet have stated the scientific facts or external symptoms upon which it is based. People v. Kemmler,

119 N. Y. 580 ; 24 N. E. 9 ; People v. Taylor, 138 N. Y. 398 ; 34 N. E. 275 ; People v. Hoch, 150 N. Y. 291 ; 44 N. E. 976.

The prosecution called several persons as witnesses, who were not experts, and they testified to various acts and conversations with the defendant at or about the time of the homicide, and they were then asked whether those acts and conversations were rational or irrational, and the answer was that they were rational. These answers were received under objection and exception by the defendant's counsel.  It is now urged that these questions were improper ; that the inquiry should have been, not whether the defendant was absolutely rational or otherwise, but as to the opinion or impression which the witness derived from his acts and conversations at the time on this subject, or with reference to his mental condition.  It is doubtless true that such is the form of the question which the courts have long sanctioned for the examination of nonexpert witnesses.  They are not allowed to express an opinion on the subject of sanity or insanity, or as to whether the party was in fact rational or irrational, but only to state the impressions that the acts and declarations of the party concerning whom the inquiry is made produced upon their minds at the time.  Paine v. Aldrich, 133 N. Y. 544, 30 N. E. 725 ; Clapp ·v. Fullerton, 34 N. Y. 190 ; O'Brien v. People, 36 N. Y. 276.  But, while these questions were improper in form, it is quite apparent, when the whole examination is read, that the witnesses were all the time stating nothing more than their opinions and impressions derived from the acts and conversations stated, and such must have been the understanding of the court and jury.  There was, no doubt, a technical error committed in permitting the district attorney to propound the questions in that form, but it is equally clear, we think, that the defendant was in no way harmed or prejudiced by the ruling.  When the testimony given by these witnesses is carefully examined, it will be seen that it amounts to nothing more than the impressions which the witnesses derived from the acts and conversrtions related, and there is no reason to believe that it was understood by the jury in any other sense. Moreover, it should be observed that the objection to the question to these witnesses as well as that to the experts was so general as not fairly to indicate the ground now urged against the ruling.

It appeared from the testimony of the defendant's witnesses that for some time prior to the homicide, and while his wife was in the hospital, and when it became known to him that she intended to separate from him, he was seen to exhibit considerable emotion, and on some occasions to shed tears. It was upon his acts, statements, and general appearance on such occasions that the witnesses called in his behalf formed their opinions in regard to his mental condition. Whether his condition at these times was due to any mental disease or to his intemperate habits, was, of course, a question for the consideration of the jury. But the principal medical expert called by the people was asked whether those acts and this conduct on the part of the defendant did not indicate insanity. The witness stated, in substance, that crying in most, if not all, cases is no indication of insanity; that it is more an indication of returning sanity, as the insane never cry. On cross-examination he was asked by the defeudant's counsel whether he had ever examined a man named Jacob Heiser. This question was objected to as incompetent, and the counsel then stated that the purpose was to show that the same symptoms existed in the case of Heiser, and upon the doctor's certificate he was sent to an insane asylum; that he cried a good deal, as the defendant did. The court sustained the objection, and excluded the answer. No exception appears to have been taken to this ruling. We cannot say that the ruling was erroneous without injecting into the offer some things which it does not contain as it appears in the record. We could, perhaps, fairly assume that the doctor who made the certificate upon which Heiser was sent to the asylum was the witness then upon the stand; but there was no offer to show that the man had been sent to the asylum upon the same indications that existed in the case of the defendant, and upon those alone. If such had been the offer, the inquiry was, perhaps, admissible as tending to affect the credibility of the witness and the value of his opinion with the jury. Whether the witness had or had not at some time examined another person, was, upon its face, a collateral and immaterial inquiry. There was no error in excluding the answer, unless it appeared from the offer that it was a proper basis for impeaching the witness by proof of some act or declaration out of court which was contradictory of or inconsistent with his

testimony already given. What the counsel proposed to show was that Heiser was sent to the asylum upon the doctor's certificate, though he cried as the defendant did. It was not proposed to show that this was the ground upon which the certificate was made, or even that the witness observed or knew of any such symptom in his case. In order to render the question competent as a basis of impeachment, it should have appeared from the offer that the witness made a certificate or statement in another case contradictory of or inconsistent with his testimony at the trial. To say that Heiser cried at some time or frequently was of no consequence, since it was not proposed to go further, and show that the witness recognized it as a symptom of insanity, or that it entered into and influenced his action in making the certificate.

Legal error cannot be predicated upon an offer to impeach a witness when the offer is expressed in language so vague and indefinite. The court may properly exclude such collateral matters, unless it is made to appear clearly that the evidence will tend to impeach or discredit the witness, and it seems to us that the offer made by the defendant's counsel did not meet this requirement. A question, or an offer of proof intended to be the foundation of 'the impeachment of a witness, should be clear and specific. If it does not embrace all the elements of a contradictory or inconsistent act or statement made out of court, it may properly be excluded. The question and the offer, when read together, did not necessarily indicate to the court any proper basis for an impeachment of the witness. But, even if all this were otherwise, there is no reason to believe that the defendant was in any degree prejudiced by the ruling. It was, at most, a technical error in excluding a collateral inquiry into the conduct of the expert in granting a certificate in another case, and there is no ground stated to justify the belief that, had it been pursued, it would have resulted in anything that could have benefited the defendant upon the issues in the case. The power of this court to grant a new trial upon erroneous rulings at the trial is simple, even if no exception has been taken; but in such a case it should appear that some principle or rule of law has been violated, to the prejudice of the accused. If it appeared in this case that the accused had been or might have been prejudiced by an erroneous ruling, we would not

hesitate to grant a new trial, thought no exception appears in the record. But a careful examination of the whole case has satisfied us that the ruling, if deemed to be erroneous, was of no consequence, and could have had no effect upon the result. The power to grant a new trial for legal error must be exercised in comformity with another provision of the statute, which requires that judgment upon an appeal must be rendered without regard to technical errors or defects, or exceptions which do not affect the substantial rights of the parties. Code Cr. Proc. section 542. The rulings which we have referred to, and which are discussed at length upon the brief of the defendant's counsel, fall, as we think, within the provisions of this section. On the whole case we are compelled to say that the record does not disclose any substantial ground upon which this court would be justified in interfering with the judgment, and it must, therefor, be affirmed. All concur; BARTLETT, J., in result. Judgment affirmed.