## COURT OF APPEALS.

### Oct. 4, 1910.

# PEOPLE v. BEECHER FABER.

(199 N. Y. 256.)

(1.) MURDER—ARRAIGNMENT OF DEFENDANT FOR JUDGMENT—DEFENDANT MUST BE GIVEN OPPORTUNITY TO SHOW CAUSE WHY JUDGMENT SHOULD NOT BE PRONOUNCED AGAINST HIM.

Under the common law and by statute (Code Cr. Pro. § 480) it is necessary in capital cases that a defendant be asked before sentence, whether he has any legal cause to show why judgment should not be pronounced against him, and the failure to ask this question of the defendant in this case, after his conviction under the erroneous charge therein, constitutes reversible error. *Quaere*, however, whether the proceedings can be remitted to the trial court to enable it to proceed according to law.

(2.) SAME—ERRONEOUS CHARGE AS TO DUTY OF JURORS IN CONSIDERING EVIDENCE.

It is reversible error, upon the trial of a defendant, charged with the crime of murder in the first degree, for the trial court to refuse to charge that " while it is the duty of each juror to discuss and consider the opinion of others he must decide the case upon his own opinion of the evidence and upon his own judgment; " and to charge, instead thereof, " the juror should join with his co-jurors, and should make. in some respects their opinion his own," and " if, after discussing with his fellow-jurors, he changes his mind, it is just what he ought to do, if he can. I shall not advise a juryman to make himself a standard for everybody else. You never could accomplish anything that way."

(3.) EVIDENCE—WHEN EXPERT WITNESS MAY GIVE HIS OPINION WITHOUT SPECIFYING DETAILS UPON WHICH OPINION IS BASED.

It is competent for a person offering an expert as a witness, for the purpose of showing the strength of the opinion which he is about to express, to specify in detail the observations upon which the opinion is based. It is of course competent for the

opposite party on cross-examination to call for the observations, and probe the underlying facts to the fullest extent for the purpose of thus affecting, so far as possible, the strength of the opinion expressed or to form a basis upon which other experts may be asked to contradict or explain the opinion first expressed. But it is not legal error to permit a medical expert, who has made a personal examination of a patient for the purpose of determining his mental condition, to give his opinion as to that condition, at the time of the examination, without in the first instance disclosing the particular facts upon which the opinion is based.

(4.) JURORS.

Duties and responsibilities of jurors, under proper direction from the court, considered and passed upon.

APPEAL from a judgment of the Supreme Court, rendered July 10, 1909, at a Trial Term for the county of Warren, upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*J. Edward Singleton* for appellant. The expert witnesses sworn on behalf of the People were erroneously allowed to express their opinions as to the sanity of defendant without first giving the facts on which the opinion was based. (*People* v. *Truck,* 170 N. Y. 203; *People* v. *Nino,* 149 N. Y. 317.) The trial court erroneously charged the jury that while it is the duty of each juror to discuss and consider the opinion of others, he must decide the case upon his own opinion of the evidence and upon his own judgment. (*People* v. *Sheldon,* 156 N. Y. 268.)

*John H. Cunningham* for respondent. The evidence fully justified the verdict, and the verdict is in accordance with the weight of the evidence. (*People* v. *Sutherland,* 154 N. Y. 350; *People* v. *Farmer,* 194 N. Y. 251; *People* v. *Flanigan,*

174 N. Y. 356; *People* v. *Johnson,* 110 N. Y. 134; *People* v. *Hunter,* 184 N. Y. 243.) There was no error in any ruling relating to the reception of expert testimony. (*People* v. *Stewart,* 148 N. Y. 571; *People* v. *Lake,* 12 N. Y. 358.) It is not legal error to permit a medical expert, who has made a personal examination of a person for the purpose of determining his mental condition, to give an opinion as to that condition at the time of the examination without, in the first instance, disclosing the particular facts upon which the opinion is based . (*People* v. *Youngs,* 151 N. Y. 210; *People* v. *Krist,* 168 N. Y. 33.)

CHASE, J. The defendant has been convicted of the crime of murder in the first degree. It is not denied that he shot and killed Maud Bumps, otherwise known as Maud Ryan. It is contended on behalf of the defendant that the evidence of premeditation and deliberation is not sufficient to sustain the judgment rendered, and it is also contended in his behalf that the defendant at the time of the commission of the act was laboring under such a defect of reason as not to know the nature and quality of the act he was doing, or that the act was wrong.

We have fully examined the record and are of the opinion that the judgment should not be reversed as a matter of fact, but that the trial judge erred in his charge in relation to the duties of jurors. At the close of the main charge the defendant's counsel made a request to the court to charge, and the record of the request, the rulings of the court, and the exceptions to the rulings are as follows:

" Defendant's Counsel: I ask your honor to charge the jury that while it is the duty of each juror to discuss and consider the opinion of others he must decide the case upon his own opinion of the evidence and upon his own judgment.

" The Court: I shall not tell them that. I shall tell the juror that he should join with his co-jurors, and should make in some respects their opinion his own.

" Defendant's Counsel: I except.

" The Court: If, after discussing with his fellow-jurors, he changes his mind, it is just what he ought to do, if he can. I shall advise a juryman to make himself a standard for everybody else. You never could accomplish anything that way.

" Defendant's Counsel: I except to the refusal of the court to charge as requested and to the charge as made."

The request of the defendant's counsel was a correct statement of the duty of jurors, and it should have been charged. The defendant had been tried before a previous jury and they had failed to agree. The trial judge, in his apparent desire to have the jury agree, inadvertently overlooked the independent, individual and personal character of jurors composing the body who sit to determine controversies. An approval of the charge would make it a precedent. We cannot disapprove the charge and at the same time affirm the judgment, because if a juror, in compliance with the direction of the court, made the opinion of the other jurors in some respects his opinion, it may have resulted in an agreement by the jury where an agreement would not have been obtained if each juryman in obedience to his right and duty had decided the case upon his own opinion of the evidence and upon his own judgment.

The verdict of a juror should be free and untrammeled. In arriving at a verdict the judge presiding at the court must not attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict. It was held in substance in *People* v. *Sheldon* (156 N. Y. 268) that an attempt to drive the members of a jury into an agreement is beyond the power of the court, and that an obvious effort to effect such result demands a new trial, and in that case the authorities relating to the subject in this and other states were quite fully discussed. (See, also, *Twiss* v. *Lehigh Valley R. R. Co.,* 61 App. Div. 286.)

Urging a jury to an agreement contrary to the individual opinion and judgment of one of the jurors may be coercion.

The verdict of a jury should not be the general average of the views of its individual members but consensus of individual judgment. Every juror takes an oath that is individual, and that puts upon him as an individual the responsibility of correctly determining the matters submitted. He is a member of the body of twelve men, but he acts individually and is alone answerable to his conscience.

BREWER, J., in *State* v. *Bydee* (17 Kansas, 462) in giving expression to the same thought said: " A verdict is the expression of the concurrence of individual judgments, rather than the product of mixed thoughts. It is not the theory of jury trials, that the individual conclusions of the jurors should be added up, the sum divided by twelve, and the quotient declared the verdict, but that from the testimony each individaul juror should be led to the same conclusion; and this unanimous conclusion of twelve different minds is the certainty of fact sought in the law."

In Brickwood Sackett Instructions, which quotes from the language of judges in their charges to jurors in different cases, it is said: " No juror from mere pride of opinion hastily formed or expressed should refuse to agree, nor, on the other hand, should he surrender any conscientious views founded on the evidence. It is the duty of each juror to reason with his fellows concerning the facts, with an honest desire to arrive at the truth and with a view of arriving at a verdict. It should be the object of all the jury to arrive at a common conclusion, and to that end to deliberate together with calmness. It is your duty to agree upon a verdict if that be possible, without a violation of conscientious convictions." (*Myers* v. *State,* 43, Fla. 500.)

Again, quoting from *Jackson* v. *State* (91 Wis. 253), it is said: " It is the duty of each juryman, while the jury are deliberating upon their verdict, to give careful consideration

to the views his fellow-jurymen may have to present upon the testimony in the case. He should not shut his ears, and stubbornly stand upon the position he first takes, regardless of what may be said by the other jurymen. It should be the object of all of you to arrive at a common conclusion, and to that end you should deliberate together with calmness."

Again, quoting from *Simon* v. *State* (18 So. Rep. 732), it is said: " I will charge you that when you go into the jury room you may discuss the case together and compare notes and reason together, but before you make up your verdict you must make up in your own mind, without reference to the other jurors, whether or not the defendant is guilty and if guilty, the degree in which you are to find him guilty. In short, when men are jurors they sit here as individuals, so far as their individual verdict is concerned, and the juror should be governed by his own conscience and not by the minds and consciences of his fellow-jurors."

The importance of having a jury agree may properly be urged upon their attention. They may be requested not to take a position that is beyond further consideration, reasoning and argument as to the just determination of the issues between the parties. They may properly be warned against stubbornness and self-assertion. It is the duty of jurors to keep their minds open and free to every reasonable argument that may be presented by their fellow-jurors that they may arrive at a verdict which justly answers the consciences of the individuals making up the jury.

A juryman should not have any pride of opinion, and should avoid hastily forming or expressing an opinion, but he should not surrender any conscientious views founded upon the evidence, unless convinced by his fellow-jurors of his error. So long as a further argument and comparison of views may aid in bringing about a unanimous verdict, jurors may properly be kept together to continue such comparison of views and state-

ment of argument. After all the views of the several jurors are expressed and presented in the different forms, and individual opinions of the jurors are fully and conscientiously made up, if they do not agree it is the duty of jurors to so report to the court and it is the duty of the court to discharge them.

It must not be overlooked that jurymen act as individuals and they must decide a case upon their own opinion and their own judgment and not merely acquiesce in the conclusions of others. Jurymen are not to make the opinion of their fellows their own, except when in so doing they occur and approve as well as acquiesce therein, and thereby fulfill the oath which they took upon entering the jury box.

When the defendant appeared for judgment he was not asked by the clerk whether he had any legal cause to show why judgment should not be pronounced against him. The defendant was sentenced to the punishment of death within the time and by the means provided and required by law. The failure to ask the defendant whether he had any legal cause to show why judgment should not be pronounced against him was a serious error. It was indispensably necessary at common law in capital cases that a defendant should be asked before sentence if he had anything to say why sentence of death should not be pronounced against him and that this should appear of record. (1 Chitt. Cr. Law, 700; Barb. Cr. Law [2nd ed.], 370; *Messner* v. *People* 45 N. Y. 1.) It is now made necessary by section 480 of the Code of Criminal Procedure.

In *Messner* v. *People* (*supra*) the record failed to show that the prisoner was asked after the verdict was rendered and before judgment was pronounced thereon what he had to say why judgment should not be pronounced against him and no opportunity was given him by the court at that stage of the proceeding for that purpose, and it was held that the omission was error for which there must be a new trial. ALLEN, J., concurred in the reversal, but voted to remit the proceedings to the

Court of Oyer and Terminer to give judgment on the conviction.

In *Ball* v. *United States* (140 U. S. 118) the courts say: " At common law no judgment for corporal punishment could be pronounced against a man in his absence, and in all capital felonies it was essential that it should appear of record that the defendant was asked before sentence if he had anything to say why it should not be pronounced. * * * The forms of record are deeply seated in the foundations of the law; and as they conduce to safety and certainty, they surely ought not to be disregarded when the life of a human being is in question * * *." (P. 129.)

It would be necessary, therefore, to reverse the judgment of conviction in this case even if we were not of the opinion that the trial court erred in directing the jurors in regard to their duties. It is not necessary for us to pass upon the question whether in case of a reversal based wholly upon the failure of the court to ask the defendant at the time he appeared for judgment whether he had any legal cause to show why judgment should not be pronounced against him, this court could, as suggested by Judge ALLEN in the *Messner case,* remit the proceedings to the trial court to give judgment on the conviction, unless the defendant upon being asked should give a legal cause why judgment should not be so pronounced against him.

It is unnecessary to consider the other alleged errors claimed in behalf of the defendant, as the questions so presented may not arise upon a new trial, except as to the contention of the defendant that the court erred in allowing the admission of certain opiinons as to the defendant's sanity which were given by physicians who are skilled and experienced alienists, without requiring the prosecution to first disclose the personal conversations, observations and examinations upon which such experts severally based their opinions.

It is claimed on behalf of the defendant that he was insane, and the determination of that question was of vital importance

on the trial and may be of vital importance on a new trial. The court upon a new trial will undoubtedly be called upon to rule upon similar questions as to the admission of evidence, and we will consider such rulings now, that the trial court may have the opinion of this court in regard thereto upon the new trial.

In the early history of the courts of England mere opinion evidence was wholly rejected. The admission of opinions as evidence by persons specially qualified by skill and experience to speak as experts has been a matter of development both in England and in this country. The history of the admission of such evidence with illustrations from decisions of the courts is given by Wigmore in his exhaustive work on Evidence, and in connection therewith he refers to the practice of admitting opinion evidence by experts based upon observation, and concludes that evidence by experts of conceded skill and experience may be received when based upon the observation of the witness without in the first instance necessarily requiring that the facts observed be stated to the court and jury. In connection with his discussion of the question as to the admissibility of opinion evidence and of the early opposition to the admission of such evidence in any case, he says: " It has already been seen in reviewing the history of the doctrine, that in the beginning the disparagement of opinion rested on grounds totally different from those now received. It was objected to because as a mere guess, the relief of one having no good grounds, it lacked the testimonial qualification of observation; hence, a *mere* opinion, as soon as it appeared to be such, must be rejected. In a few jurisdictions the modern doctrine has been confused with the earlier one, and it is laid down as a general rule that opinions must be accompanied with the facts on which they are based— usually with the exception that expert witnesses are exempted from this rule.

" Now, in no aspect is this rule sound. In the first place,

then, there is no principle and no orthodox practice which requires a witness having personal observation to state in advance his observed data before he states his inferences from them; all that needs to appear in advance is that he had an opportunity to observe and did observe, whereupon it is proper for him to state his conclusions, leaving the detailed grounds to be drawn out on cross-examination. Any other rule cumbers seriously the examination, and amounts in effect to changing substantially the whole examination into a *voir dire*— an innovation on established methods which is unwarranted by policy." (Section 1922.)

He further says: " All opinions or conclusions are in a sense hypothetical. But does it follow that, when the opinion comes from *the same witness* who has learned the premises by actual observation those premises must be stated beforehand, hypothetically or otherwise, by him or to him? For example, the physician is asked, 'Did you examine the body?' 'Yes.' 'State your opinion of the cause of death.' Is it here necessary that he should first state in detail the facts of his personal observation, as premises, before he can give his opinion? In academic nicety, yes; practically, no; and for the simple reason that on cross-examination each and every detail of the appearances he observed will be brought out and thus associated with his general conclusion as the grounds for it, and the tribunal will understand that the rejection of these data will destroy the validity of his opinion. In the opposite case, where the witness has not had personal observation of the premises, they are not to be got from him on cross-examination, because he had no data of personal observation; and that is precisely the reason why they must be indicated and set out in the question to him, for thus only can the premises be clearly associated with the conclusion based upon them.

" Through failure to perceive this limitation, courts have sometimes sanctioned the requirement of an advance hypo-

thetical statement even where the expert witness speaks from personal observation." (Section 675.)

There is a great difference in the decisions of the courts of the states upon this subject, but it seems unnecessary to consider such authorities other than those of this state. We are in accord with the conclusions reached by Mr. Wigmore in his work on Evidence and such conclusion is in accord with the weight of authority in this state.

In *People* v. *Youngs* (151 N. Y. 210; 11 N. Y. Crim. 546) the question was directly before this court, and its determination was essential to the disposition of the appeal. Evidence of the opinions of experts was received in that case without first requiring that the observations upon which such opinions were based be given in evidence. The judgment appealed from, by which the defendant had been sentenced to death, was affirmed, and this court said: " It appears by the record that certain medical experts were called as witnesses by the prosecution who testified that they had made a personal examination of the defendant with reference to his sanity, and were then asked whether in their opinion he was sane at the time of such examination. These questions were objected to by the defense as incompetent, but the objection was overruled and there was an exception. It is now urged that these experts should not have been permitted to express an opinion, without first stating the facts upon which such opinion was based. The testimony of experts is an exception to the general rule which requires that the witness must state facts and not express opinions. In such cases the opinion of the witness may be based upon facts so exclusively within the domain of scientific or professional knowledge that their significance or force cannot be perceived by the jury, and it is because the facts are of such a character that they cannot be weighed or understood by the jury that the witness is permitted to give an opinion as to what they do or do not indicate. In such cases it is the opinion of the witness that is

supposed to possess peculiar value for the information of the jury. Of course, all the facts or symptoms upon which the opinion is based may be drawn out also, either upon the direct or cross-examinations. It is undoubtedly the better practice to require the witness to state the circumstances of his examination and the facts, symptoms or indications upon which his conclusion is based before giving the opinion to the jury. But we think that it is not legal error to permit a medical expert who has made a personal examination of a patient for the purpose of determining his mental condition, to give his opinion as to that condition at the time of the examination, without in the first instance disclosing the particular facts upon which the opinion is based. The party calling the witness may undoubtedly prove the facts upon which the opinion is based, and, as we have already observed, that is doubtless the safer practice. It may also be true that the court in the exercise of a sound discretion may require the witness to state the facts before expressing the opinion, and in all cases the opposite party has the right to elicit the facts upon cross-examination. But the precise question here is whether the court committed an error in permitting the witness to give the opinion before the facts upon which it was founded were all disclosed, and we think that when it is shown that a medical expert has made the proper professional examination of the patient in order to ascertain the existence of some physical or mental disease he is then qualified to express an opinion on the subject, though he may not yet have stated the scientific facts or external symptoms upon which it is based. (*People* v. *Kemmler,* 119 N. Y. 580; *People* v. *Taylor,* 138 N. Y. 398; *People* v. *Hoch,* 150 N. Y. 291; 11 N. Y. Crim. 488.) " (P. 218.)

The only cases in this court that have been called to our attention as authority for the contention that all of the facts observed by an expert upon which he bases his conclusion as to the sanity or insanity of a defendant must be laid before

the jury before the opinion is expressed are *People* v. *Nino* (149 N. Y. 317; 12 N. Y. Crim. 228) and *People* v. *Truck* (170 N. Y. 203; 16 N. Y. Crim. 342.)

The jury are undoubtedly entitled to the facts on which an insanity expert bases his opinion, if the same are sought by the prosecution or the defendant, and the language of this court in the *Nino* case is in no way opposed to the quotation from the opinion in the *Youngs* case, except that the judge writing the opinion in the *Nino* case added to his statements in regard to the right to present to the jury the facts upon which the insanity expert bases his opinion, the words: " It is not only competent, but necessary that they should be laid before the jury." This expression was not necessary to the discussion of the question then under consideration, and it was not considered binding upon this court in the *Youngs* case.

In the *Truck* case the same judge, writing for this court, referred with approval to the opinion in the *Nino* case, but in that case the expressions used in connection with his reference to the *Nino* case were not essential to the determination of that case, and, so far as there is anything in the expressions mentioned in either case, they should not be and are not now considered as binding upon this court as against the necessary and controlling determination of the court in the *Youngs* case.

A witness to a will, although a non-expert may testify to the competency of the testator to make a will. In common practice in the courts a physician who has examined a patient is allowed to testify directly as to the disease from which the patient is suffering. There seems to be no good reason for requiring a physician to specify in detail his observations before expressing an opinion as to the sanity or insanity of a person examined by him any more than he should be required to recount such observations in advance of expressing an opinion as to whether a person had typhoid fever or was suffering from an epileptic fit.

As has already been expressed by others, from which expressions we have quoted, it is competent for a person offering an expert as a witness for the purpose of showing the strength of the opinion which he is about to express, to specify in detail the observations upon which the opinion is based. It is of course competent for the opposite party on cross-examination to call for the observations, and probe the underlying facts to the fullest extent for the purpose of thus affecting, so far as possible, the strength of the opinion expressed or to form a basis upon which other experts may be asked to contradict or explain the opinion first expressed.

The trial did not err in allowing the physicians to express their opinions in regard to the sanity of the defendant without previously stating in detail the observations upon which the opinions were based.

For the reasons stated the judgment of conviction should be reversed and a new trial granted.

CULLEN, Ch. J., HAIGHT, WILLARD BARTLETT AND HISCOCK, JJ., concur; GRAY, J., absent.

Judgment of conviction reversed, etc.