(January 14, 1988)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWARD 25X KING, JR., Appellant.—Judgment of the Supreme Court, New York County (Clifford A. Scott, J.), rendered September 30, 1985, convicting defendant after a jury trial of criminal possession of a weapon in the third degree, and sentencing him as a predicate felon to a 3½-to-7-year indeterminate term, unanimously reversed, as a matter of discretion in the interest of justice, and the case is remanded for a new trial.

Defendant was convicted after a jury trial of criminal possession of a weapon in the third degree. Although the evidence strongly supports the jury's verdict, the conviction must be reversed because the unbalanced, coercive character of the trial court's supplemental instructions to the jury denied him the fundamentals of a fair trial.

The defendant was arrested in possession of a duffel bag that was found to contain a .12 gauge sawed-off shotgun in three pieces. The defendant testified that the bag was possessed by another person, Thomas, who, as the police ran by in search of someone, abandoned the bag and walked away. The defendant claimed that he picked up the bag in connection with his effort to remind its owner that he had forgotten the bag, at which time he was arrested. Thomas, testifying in

rebuttal, denied ownership of the bag, and testified that the defendant was in possession of it at all relevant times.

On the second day of deliberation, at about 12:30 P.M., the jury submitted two notes to the court—one informing the court of the religious obligations to attend mass of four Catholic jurors on that day, and the other informing the court that the jury was "hopelessly deadlocked". The court charged the jury in relevant part as follows: "I want to tell you this. This Court has a reputation of having, not having hopelessly deadlocked juries, so the Court, it's contemplating keeping you here until we reach some kind of verdict, and that is not a threat, it's just that this evidence has been presented to you. And to answer one of the jurors, word, came to me, one of the jurors has asked one of the Court Officers before he or she went in there, how long would it take to deadlock a jury. It could take until Sunday. It doesn't make any difference if you are going in there with your minds closed and you decide you are going to hang up the jury. That's not true. You are not assisting us in the administration of our Criminal Justice System. This is a simple case. The law comes from the Court. You listen to the evidence. You make whatever decision you wish to make. And I told you that not, if you have a reasonable doubt, it's not just any kind of doubt, a guess or a whim, a surmise or feeling that the accused may not be guilty. I said you could conceive of a doubt on almost anything, but it must be a doubt for which you can give a reason. You don't guess and have a feeling about this. Did the evidence, you listened to the evidence here, did the evidence convince you that the defendant had or did not have that bag. If he had the bag, it's simple. If he didn't have the bag, it's simple. It's just as simple as that."

The applicable law was set forth by the Court of Appeals in *People v Pagan* (45 NY2d 725, 726-727) in the following words: "[A] Trial Judge 'must not attempt to coerce or compel the jury to agree upon a particular verdict, or any verdict' *(People v Faber,* 199 NY 256, 259). Supplemental charges which prod jurors through prejudicial innuendoes or coerce them with untoward pressure to reach an agreement will not be countenanced". *(See also, People v Riley,* 70 NY2d 523, *revg* 127 AD2d 458; *People v Demery,* 60 AD2d 606; *People v Josey,* 19 AD2d 660.)

The above-quoted parts of the court's supplemental instructions violated the controlling standard in several significant ways. Preliminarily, the court's pride in its reputation for not having deadlocked juries is not an appropriate consideration

to be presented to jurors in the discharge of their functions. More significantly, it was clearly coercive, in a manner directly condemned in *Pagan (supra)* for the court to say that it was "contemplating keeping you here until we reach some kind of verdict, and that is not a threat, it's just that the evidence has been presented to you". In addition, the selective and unbalanced summary of the reasonable doubt instructions was, in context, seriously prejudicial. Finally, the court's description of the issue as being "simply whether or not the defendant had the bag", if understood by the jury in accordance with its plain meaning, effectively eliminated from its consideration defendant's central claim that he indeed had the bag at the time he was arrested by the police, but that it belonged to another and he had just picked it up to give it to the other person.

It is true that other parts of the supplemental instructions were, considered by themselves, appropriate and balanced, but we are not persuaded that this later discussion undid the damage inherent in the quoted part of the supplemental instructions.

Although no objection was registered by defense counsel to that which was said, we believe the instructions, immediately followed by a verdict, taking into consideration the time spent during interruption occasioned by the departure of some jurors for mass, deprived the defendant of a fair trial, and mandates reversal. Concur—Murphy, P. J., Sandler, Carro and Rosenberger, JJ.