■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DOUGLAS GRANT, Appellant.—Judgment, Supreme Court, New York County (Clifford Scott, J.), rendered September 24, 1986, which, after a jury trial, convicted defendant of attempted murder in the second degree (Penal Law §§ 110.00, 125.25), rape in the first degree (Penal Law § 130.35), reckless endangerment in the first degree (Penal Law § 120.25), two counts of coercion in the second degree (Penal Law § 135.60 [1]), criminal possession of a weapon in the second degree (Penal Law § 265.03), assault in the second degree (Penal Law § 120.05 [2]), criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]) and tampering with a witness in the third degree (Penal Law § 215.11) and sentencing defendant to consecutive terms of 8⅓ to 25 years on the attempted murder and rape counts, and further sentencing him to 2⅓ to 7 years on the reckless endangerment count, 1 year on each of the coercion counts, 5 to 15 years on the criminal possession of a weapon in the second degree count, 2⅓ to 7 years on the assault in the second degree count, 2⅓ to 7 years on the criminal possession of a weapon in the third degree count and 1 to 3 years on the tampering with a witness in the third degree count, the latter seven sentences to run concurrently with the sentences in the attempted murder and rape convictions, reversed, on the law and the facts and in the interest of justice, and a new trial ordered.

The crimes for which defendant was convicted grew out of the deterioration of the relationship between the complainant, who was 26 years of age at the time of the trial, and the 62-year-old defendant. They had met in 1983 and for a time lived together. In 1985 the complainant left the defendant's apartment.

The complainant and the defendant differed sharply as to what had occurred. The complainant testified that about a month before the rape, she left the defendant's apartment because of his accusations that she was seeing other men, his threats and his physical violence upon her on two occasions. She testified further that on September 4, 1985 while she was having lunch with other teachers at a delicatessen near the school where she worked, defendant appeared and asked to speak with her. She agreed to have dinner with him that evening. She testified that, following dinner, the defendant forced her to go to a hotel where he raped her. Subsequently, she went to her aunt's home and her aunt telephoned the police. When they arrived, the complainant refused to go to the hospital.

The complainant testified that on October 27, 1985, she and some friends went to a banquet at Small's Paradise in New York County. While she was in the back seat of a car and two other persons were in the front, the defendant appeared with a gun and ordered her out of the car. One woman, Patricia Taylor, fled from the car. The driver, Morris Charleston, told complainant to pretend to get out of the car and then jump back in. She did so and, as the car drove away, defendant fired the gun and slightly injured complainant's hand. Defendant was arrested several days later.

Defendant testified. He stated that he had not raped complainant on September 5, 1985 and had not even had sexual relations with her on that date. On October 27, 1985 defendant met complainant near Small's Paradise because they had agreed to meet after the banquet. He got into the car alongside of the complainant at the invitation of the female passenger, Patricia Taylor. After defendant got in, the male in the driver's seat, Charleston, told him to get out. When defendant did not do so, Charleston pulled a gun and ordered him out. As defendant moved to get out of the car, he bumped Charleston and the gun went off, striking the complainant.

The witness Charleston gave testimony that the defendant had appeared near Small's Paradise, ordered complainant from the car at gunpoint and fired at the complainant as the witness tried to drive away. The witness Taylor testified that she had seen defendant appear with a gun and order complainant from the car. Taylor had eased out of the car while the defendant's attention was diverted and run some distance away. She heard shots fired.

While the evidence in support of the verdict is strong, we reverse because of an erroneous and prejudicial supplemental charge to the jury. The jury began deliberating before lunch on July 17, 1986. On the following day, the jury requested that certain testimony be read back. The note was marked 9:50 A.M. The testimony read back consisted of approximately 60 pages. The verdict was reached at 12:31 P.M. We conclude that there is a significant possibility of a coerced verdict.

The supplemental charge was as follows:

"COURT CLERK: Will the foreperson please rise. Ladies and gentlemen, have you reached a verdict?

"THE FOREPERSON: No, we haven't.

"THE COURT: Please be seated.

*"Good morning, Judges. I said that's what you were yesterday but it seems you are having a little difficult time of it.*

*This is not a difficult case, I could have decided this in five minutes.* But I have a communication here from the judges. It says—it's marked Exhibit Number IV, dated July 18th, '86, 9:50 a.m., 'Your Honor, this question supercedes the July 17th request about the section of the court record we would like to hear are as follows *[sic]:* Valerie Reid's direct testimony and cross-examination, testimony surrounding the evening of September 4th and 5th, 1985. Thank you kindly, the Foreperson.' "

The statement that the court or jury could have decided the case in a matter of minutes is error. *(People v Riley,* 70 NY2d 523, 532 [1987]; *People v Cartagena,* 78 AD2d 601 [1st Dept 1980].)* Characterizing a case as simple or not difficult is also error. *(People v Stokes,* 139 AD2d 428 [1st Dept 1988], *lv denied* 72 NY2d 867; *People v King,* 136 AD2d 475, 477 [1st Dept 1988].)* In *People v Pagan* (45 NY2d 725, 726-727), the Court of Appeals cautioned against "[s]upplemental charges which prod jurors through prejudicial innuendoes or coerce them with untoward pressure to reach an agreement". Moreover, the fact that defendant did not object to the supplemental charge is not an insurmountable barrier to review. *(See, People v King, supra.)*

In view of this disposition, it is unnecessary to consider defendant's other contentions. We note also that, were we not reversing, and as the People concede, the defendant would have to be resentenced because of the possibility that the court mistakenly concluded that consecutive sentences on the attempted murder and rape convictions were mandatory. Concur—Milonas, Rosenberger and Smith, JJ.

Sullivan, J. P., dissents in a memorandum as follows: Since, as the majority notes, there is a possibility that the court did not realize that the imposition of consecutive sentences was not mandatory, I would remand for resentencing. In my view, however, the judgment should otherwise be affirmed.

Although the supplemental charge characterizing the case was ill-advised, I do not think that this comment, to which no exception was taken, warrants reversal. The charge, taken as a whole, was otherwise appropriate and balanced; the jury was instructed, on two separate occasions, that it "can take as long as [it] want[s] to decide this case" and that there was "no time limit." In none of the cases cited by the majority did the court reverse solely on the basis of a characterization of the case as "simple" or "not difficult". *(See, People v Riley,* 70 NY2d 523, 532; *People v King,* 136 AD2d 475, 476-477; *People v Cartagena,* 78 AD2d 601; *see also, People v Mabry,* 58 AD2d

897.) Defendant argues that the charge "singled out those jurors who had a reasonable doubt"; there was, however, no indication that the jury was deadlocked or that any members of the panel had made up their minds. I find defendant's additional contentions equally unpersuasive.