■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE RAMIREZ, Appellant. [636 NYS2d 847] —Appeal by the defendant from a judgment of the Supreme Court, Kings County (J. Goldberg, J.), rendered December 15, 1993, convicting him of manslaughter in the first degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of the branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

The hearing court properly ruled that the defendant consented to the search and seizure of his bloody clothing in a hospital emergency room *(see, People v Gonzalez,* 39 NY2d 122; *People v Ruiz,* 188 AD2d 495).

We reject the defendant's contention that the court's *Allen* charge *(see, Allen v United States,* 164 US 492) was improper. We agree with our dissenting colleague that, as a general rule, a court should not deviate from the standard *Allen* charge. However, while the charge in this case was unusually and unnecessarily lengthy, a review of the charge as a whole

demonstrates that it was essentially neutral, directed at the jurors in general, and did not coerce them to reach a verdict or to achieve a specific result (see, *People v Pagan,* 45 NY2d 725; *People v Bastien,* 180 AD2d 691; *People v Fleury,* 177 AD2d 504; *People v Austin,* 168 AD2d 502). Joy, Altman and Florio, JJ., concur.

O'Brien, J. P., dissents and votes to reverse the judgment and to order a new trial with the following memorandum: I agree with my colleagues that the trial court's suppression ruling was correct. I would grant the defendant a new trial, however, since I cannot agree with my colleagues that the court's *Allen* charge (see, *Allen v United States,* 164 US 492) was neutral and not coercive. The court's instructions deflected the focus of the jury's deliberations from the evidence in the case to the race and personalities of the participants at the trial.

The defendant was charged with killing a drug dealer who wounded him and killed his friend during an exchange of gunfire on a public street. The defendant's first trial ended in a hung jury. At his second trial, the jury deliberated the first day for about six hours without reaching a verdict. After deliberating the next morning, the jury informed the court that it could not reach a verdict. The court instructed the jury to continue deliberating. After about another hour of deliberations, the jury informed the court that it was still deadlocked. The court again instructed the jury to continue deliberating. Later that evening, the jury informed the court a third time that it was unable to come to an agreement. The court sent the jurors to a hotel for the night after informing them that it hoped that they would be able to reach a verdict.

The next morning, outside the presence of the jury, the court informed the attorneys that it was going to give the standard *Allen* charge and that it would instruct the jurors that they should not be influenced by any racial considerations or by their feelings for the attorneys, the victim, or the defendant. The defense counsel objected to any instructions other than the standard *Allen* charge and noted that there was no indication that sympathies or race were playing a part in the jury's deliberations. Race was not an issue in this case since the victim and the defendant were of the same race. The court agreed that it was speculating about what was on the jurors' minds. However, it delivered its charge over defense counsel's strenuous objections.

The court began by suggesting to the jurors that some of them might not be making a "careful, calm, reasonable and

logical determination." The court also stated: "But sometimes we make important decisions not based on the facts and the evidence and the weighing and the logic, and even sometimes we vote for political candidates not based on political merits but on the color of a candidate's skin. Again, that has nothing to do with the merits but sometimes we do these things."

The court suggested that the jurors' problem in reaching a verdict might be due to their feelings about the attorneys: "Now the second area you may be having a problem with—and again, I don't know—you may be letting your feelings about the lawyers influence your verdict. Now, this may not even occur to you because it may be unconscious, rather than something you're consciously thinking about, because sometimes the jurors let their decisions be guided by their feelings about the lawyers, rather than their analysis of the evidence in the case. Even if the lawyer hasn't given his or her personal opinion in the case, you still may be thinking in terms of whether you like or dislike a particular lawyer.

"Now, Abraham Lincoln was a lawyer before he was a [P]resident, and he hardly ever lost a case, and it [didn't] matter if he was a [d]efense [a]ttorney, it [didn't] matter if he was a prosecutor, it didn't matter if he was representing the railroad against the small farmer, and it didn't matter if he was representing the small farmer against the railroad. He won his cases. He won his cases, not because the law and the evidence were always on his side; he won his cases because juries trusted Abe Lincoln, because it's natural sometimes for juries not to really think about the evidence in the case but to start thinking about the lawyer."

The court then instructed the jurors that they should put any personal feelings about the attorneys aside and think about the evidence in the case.

In addition, the court instructed the jurors not to consider race in their deliberations:

"And finally, and this is just a fact of life here, and if I'm off-base here and it doesn't apply I apologize if I am offending anybody, but some people make decisions based on race. Again, if it's not playing a role in anybody's decision here, I apologize for bringing it up. But if this is on anyone's mind, if the race of the victim, the race of the defendant, the race of any of the witnesses or the race of the lawyers, my race, is influencing any one of you, you have a duty to try to put those feelings aside and bring in a verdict based on the evidence in the case. Because any concept of justice in a fair trial doesn't include factoring in what the race of anybody is.

"Again, if it's not playing a part in anybody's deliberations, I apologize. If I'm offending you by bringing this up, I apologize, but if it is playing a part in anyone's thinking, please try to put the feeling aside and reach a verdict based on the law and the evidence."

The defense counsel's motion for a mistrial, which was based on the charge, was denied. One hour after the court delivered its *Allen* charge, the jury reached a verdict.

It is the duty of the court to discharge the jurors if their individual opinions are conscientiously made and they cannot agree *(see, People v Faber,* 199 NY 256, 261). An *Allen* charge is proper "provided it does not urge that (1) a dissenting juror abandon his own conviction and join in the opinion of other jurors, (2) attempt to coerce or compel the jury to agree upon a particular verdict, or (3) shame the jury into reaching a verdict" *(People v Hardy,* 109 AD2d 802; *see also, People v Perdomo,* 204 AD2d 358; *People v Bastien,* 180 AD2d 691). "Supplemental charges which prod jurors through prejudicial innuendoes or coerce them with untoward pressure to reach an agreement will not be countenanced" *(People v Pagan,* 45 NY2d 725, 726-727).

The overall effect of the court's *Allen* charge was to communicate to the jurors the court's opinion they were letting their emotions, rather than a careful consideration of the evidence, dictate their decision and that their inability to reach an unanimous verdict was not based upon their conscientiously held beliefs, but upon unconscious prejudices toward the parties and counsel.

"[J]ury instructions generally are not fertile ground for innovation during trial, particularly when [the] defendant objects" *(People v Owens,* 69 NY2d 585, 589). The court should not have deviated from the standard *Allen* charge by speculating about the jurors' concerns. As the court acknowledged to defense counsel, race was not an issue in this case. Moreover, even if the court believed that the attorneys' conduct warranted comment, it had already delivered the standard, neutral instruction regarding attorneys in its main charge *(see,* 1 CJI[NY] 5.12, at 224).

Although the court did instruct the jurors that they were not to give up their conscientiously held beliefs, such an admonition was not sufficient under the circumstances of this case to neutralize the coercive nature of the court's other instructions. Rather than reinforcing the admonition that the jurors must keep open minds in reaching a verdict, the court's remarks cast suspicion on the motives of those who were not

voting with the majority. In my view, the court's *Allen* charge coerced conformity among the jurors and shamed them into reaching a verdict. The fact that a verdict was reached only an hour after the charge was delivered reinforces my view. Accordingly, I would reverse the defendant's judgment of conviction.

